# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ISIDRO MIGUEL DELACRUZ,
*Petitioner–Appellee*

V.

ERIC GUERRERO,
Director, Texas Department of Criminal Justice,
Correctional Institutions Division,
*Respondent–Appellant*

On Interlocutory Appeal from the United States District Court for the
Northern District of Texas, San Angelo Division,
Civ. Action 6:24-CV-00013-H

# PETITIONER–APPELLEE'S BRIEF

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers
Supervisor, Capital Habeas Unit
Texas Bar No. 24084578
jeremy_schepers@fd.org

Kathryn Wood Hutchinson (TX 24078707)
McKenzie Edwards (TX 24116316)
Derek VerHagen (TX 24090535)
Assistant Federal Public Defenders
katy_hutchinson@fd.org

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 (fax)

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **The Honorable James Wesley Hendrix**<br>Northern District of Texas,<br>San Angelo Division<br>United States District Court<br>33 E. Twohig Avenue, Room 202<br>San Angelo, Texas 76903-6451 | United States District Judge |
| **Isidro Miguel Delacruz** | Petitioner–Appellee |
| **Capital Habeas Unit**<br>Office of the Federal Public Defender<br>Northern District of Texas<br>525 S. Griffin St., Ste. 629<br>Dallas, Texas 75202 | Counsel for Petitioner–Appellee |
| **Eric Guerrero,** Director, Texas Department of Criminal Justice, Correctional Institutions Division | Respondent–Appellant |

**Katie Abell**
Assistant Attorney General
Texas Attorney General's Office
Criminal Appeals Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711

Counsel for
Respondent–Appellant

Dated: September 22, 2025

 */s/ Kathryn Wood Hutchinson*
Kathryn Wood Hutchinson

## STATEMENT REGARDING ORAL ARGUMENT

This interlocutory appeal involves fundamental questions about this Court's appellate jurisdiction and the district court's subject matter jurisdiction. Moreover, in arguing that this Court has jurisdiction pursuant to the collateral order doctrine, Appellant concedes that the issues present in this case are important. For these reasons, oral argument would assist this Court in resolving the case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................i

STATEMENT REGARDING ORAL ARGUMENT ......................... iii

TABLE OF CONTENTS...............................................................iv

TABLE OF AUTHORITIES...........................................................v

INTRODUCTION....................................................................... 1

STATEMENT OF THE CASE...................................................... 3

SUMMARY OF THE ARGUMENT ..............................................11

ARGUMENT .............................................................................12

I.  This Court lacks jurisdiction because the district court's order was not immediately appealable under the collateral order doctrine. ......................................................................... 12

II.  The district court had both jurisdiction and the authority to order that Mr. Delacruz be free from restraints during his neuropsychological examination................................................ 25

III.  Neither AEDPA nor *Shoop v. Twyford* precludes the district court from ordering Mr. Delacruz free from restraints during his neuropsychological examination. ........................................... 29

IV.  The Director's newly raised "security concerns" do not lend any support to his argument that the district court's order is inappropriate or that Mr. Delacruz should be denied the legal visit he secured in accordance with TDCJ's procedures. ............. 32

CONCLUSION......................................................................... 36

CERTIFICATE OF SERVICE ................................................... 38

CERTIFICATE OF COMPLIANCE................................................ 38

# TABLE OF AUTHORITIES

**Federal Cases**                                                              **Page(s)**

*Beatty v. Collier*,
No. 4:09-CV-225-SDJ, 2022 WL 5417480 (E.D. Tex. Sep. 16, 2022)...................................................................................................18

*Beatty v. Lumpkin*,
52 F.4th 632 (5th Cir. 2022) ......................................................*passim*

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)...........................................................2, 12, 14, 16

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)...........................................................................15

*In re Deep Water Horizon*,
793 F.3d 479 (5th Cir. 2015)............................................................13

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994)....................................................................12, 13

*Fleming v. United States*,
127 F.4th 837 (11th Cir. 2025) .......................................................23

*Gonzales v. Quarterman*,
458 F.3d 384 (5th Cir. 2006)............................................................35

*Hall v. Guerrero*,
No. 4:24-cv-00627 (S.D. Tex. filed Feb. 21, 2024). ......................18

*Leonard v. Martin*,
38 F.4th 481 (5th Cir. 2022) ............................................................22

*Martinez v. Ryan*,
566 U.S. 1 (2012)..............................................................................30

*McFarland v. Scott*,
512 U.S. 849 (1994).............................................................2, 27, 28

*Microsoft Corp. v. Baker*,
    582 U.S. 23 (2017) ............................................................. 15

*Mohamed v. Jones*,
    100 F.4th 1214 (10th Cir. 2024) ....................................... 24

*Mohawk Indus. Inc. v. Carpenter*,
    558 U.S. 100 (2009) ........................................ 2, 13, 21, 22

*Mullis v. Lumpkin*,
    70 F.4th 906 (5th Cir. 2023) ....................................... 30, 31

*Ozturk v. Hyde*,
    136 F.4th 382 (2d Cir. 2025) ............................................ 24

*Pan E. Expl. Co. v. Hufo Oils*,
    798 F.2d 837 (5th Cir. 1986) ............................................ 17

*Panetti v. Lumpkin*,
    No. 1:04-cv-00042 (W.D. Tex. June 29, 2022) .................... 19

*Rhines v. Weber*,
    544 U.S. 269 (2005) ................................................... 16, 30

*Segundo v. Davis*,
    831 F.3d 345 (5th Cir. 2016) ....................................... 31, 32

*Shinn v. Martinez Ramirez*,
    596 U.S. 366 (2022) ............................................. 10, 30, 31

*Shoop v. Twyford*,
    596 U.S. 811 (2022) ................................................. *passim*

*Swint v. Chambers Cnty. Com'n*,
    514 U.S. 35 (1995) ............................................................. 14

*Trevino v. Thaler*,
    569 U.S. 413 (2013) ................................................... 30, 32

*United States v. Cervantes*,
    No. 22-10093, 2023 WL 3375571 (9th Cir. May 11, 2023) ................ 24

*Vaughan v. Anderson Reg'l Med. Ctr.*,
    849 F.3d 588 (5th Cir. 2017) ............................................................... 31

*Washington v. Lumpkin*,
    No. 4:07-cv-721 (S.D. Tex. Feb. 15, 2022) ....................................... 19

*Wiggins v. Smith*,
    539 U.S. 510 (2003) .............................................................................. 5

*Will v. Hallock*,
    546 U.S. 345 (2006) ........................................................... 12, 13, 18

**State Cases**

*Delacruz v. State*,
    No. AP-77,079, 2023 WL 2290863 (Tex. Crim. App. Mar. 1,
    2023) ...................................................................................................... 3

*Ex parte Delacruz*,
    No. WR-88,477-01, 2024 WL 1298156 (Tex. Crim. App. Mar.
    27, 2024) ............................................................................................... 4

*Ex parte Gonzales*,
    WR-40,541-07 (Tex. 358th Dist. Ct.—Ector County, Apr. 24,
    2024) .............................................................................................. 19, 35

*Texas v. Isidro Miguel Delacruz*,
    Case No. B-14-1134-SA (Tex. 119th Dist. Ct.—Tom Green
    County) ................................................................................................. 3

**Federal Statutes**

18 U.S.C. § 3599 ........................................................................ *passim*

28 U.S.C. § 1291 ................................................................................ 12

28 U.S.C. § 1651 .............................................................. 2, 5, 9, 29

28 U.S.C. § 2254 .............................................................. 1, 7, 10, 30

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L.
    No. 104-132, 110 Stat. 1214 .................................................. 9, 11, 29

## Constitutional Provisions

U.S. Const. amend. VI ...................................................................... 5, 33

## Other Authorities

Alfonseca, Kiara, *Texas Set to Execute Man on Discredited "Shaken Baby Syndrome" Hypothesis*, ABC NEWS (Oct. 8, 2024), https://abcnews.go.com/US/texas-set-execute-man-discredited-shaken-baby-syndrome/story?id=114590999 ................. 20

Innocence Project, *Texas Lawmakers Pray With Robert Roberson and Urge Clemency to Stop Oct. 17 Execution* (October 1, 2024), https://innocenceproject.org/news/texas-lawmakers-pray-with-robert-roberson-and-urge-clemency-to-stop-oct-17-execution ........................................................................... 20

McCullough, Jolie, *Melissa Lucio Granted Stay of Execution by Texas Court of Criminal Appeals*, TEXAS TRIBUNE (Apr. 25, 2022), https://www.texastribune.org/2022/04/25/melissa-lucio-execution-reprieve ............................................................... 20

## INTRODUCTION

Isidro Miguel Delacruz currently has an initial Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 pending in federal district court. ROA.70–181. Mr. Delacruz also obtained permission from the district court to file an amended petition not to exceed 150 pages. ROA.45; ROA.184. While Mr. Delacruz's initial petition was pending, but before he filed his amended petition, Mr. Delacruz sought a district court order compelling the Texas Department of Criminal Justice ("TDCJ") to remove his restraints during a neuropsychological examination. ROA.185–89. The district court determined that it possessed the authority to order Mr. Delacruz free of arm restraints during the examination. ROA.225–27. This Court stayed that order after the Director filed an interlocutory appeal based on the collateral order doctrine, claiming that the district court lacked jurisdiction to so order. ECF No. 33.

None of the Director's contentions in this appeal has merit. First, this Court lacks jurisdiction to consider this interlocutory appeal because the district court's order is not appealable under the collateral order doctrine. There are three criteria an order must meet for that doctrine to

apply: it must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits, and (3) be effectively unreviewable on appeal from final judgment. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949); *accord Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). Because the district court's unshackling order is not conclusive, does not involve an important issue separate from the merits, and will be reviewable on appeal from final judgment, this Court should dismiss the instant appeal for lack of jurisdiction.

Second, the district court has plenary jurisdiction over Mr. Delacruz's live habeas petition; accordingly, it plainly has jurisdiction to issue the unshackling order as an ancillary order in aid of that jurisdiction pursuant to the All Writs Act. *See* 28 U.S.C. § 1651(a); *McFarland v. Scott*, 512 U.S. 849, 845–55 (1994). Neither Mr. Delacruz nor the district court relies on any other basis for establishing jurisdiction. And despite the Director's insistence to the contrary, neither *Shoop v. Twyford*, 596 U.S. 811, 817 (2022), nor *Beatty v. Lumpkin*, 52 F.4th 632 (5th Cir. 2022), warrant a different conclusion.

Finally, the Director selectively quotes TDCJ's policies and sworn testimony to obscure the fact that death-sentenced inmates are explicitly permitted to have unshackled contact visits with their experts if they obtain a court order, unless such visits pose specific and insurmountable security threats. The Director did not raise any security concerns about Mr. Delacruz in the district court that would render such an order inappropriate according to TDCJ's policies and practices, and the ones raised for the first time in this Court are nebulous and unconvincing.

This Court should dismiss this interlocutory appeal for lack of jurisdiction or, in the alternative, should vacate its order staying the district court's order and remand the case to the district court.

## STATEMENT OF THE CASE

Mr. Delacruz was convicted of capital murder and sentenced to death in the 119th Judicial District Court of Tom Green County, Texas, on April 17, 2018. *Texas v. Isidro Miguel Delacruz*, Case No. B-14-1134-SA (Tex. 119th Dist. Ct.—Tom Green County). The Texas Court of Criminal Appeals ("TCCA") affirmed Mr. Delacruz's conviction and sentence on direct appeal on March 1, 2023. *Delacruz v. State*, No. AP-77,079, 2023 WL 2290863 (Tex. Crim. App. Mar. 1, 2023). Mr. Delacruz

also filed an application for writ of habeas corpus in the convicting court, which ultimately recommended denying relief on all claims. 2 Supp. SHCR 1–22; *see* ROA.86. The TCCA adopted the trial court's findings of fact and conclusions of law on March 27, 2024, and denied relief on all of Mr. Delacruz's claims. *Ex parte Delacruz*, No. WR-88,477-01, 2024 WL 1298156 (Tex. Crim. App. Mar. 27, 2024).

Shortly thereafter, the federal district court appointed the Capital Habeas Unit of the Federal Public Defender for the Northern District of Texas to represent Mr. Delacruz in his federal habeas proceedings. ROA.31. The court further noted that Mr. Delacruz's federal habeas petition would be due on or before March 26, 2025. ROA.31. On January 23, 2025, the parties filed a Joint Proposed Scheduling Order in which they proposed that Mr. Delacruz would have 120 days from the date he filed his initial federal habeas petition to file an amended petition. ROA.38. The district court granted that proposed scheduling order on January 27, 2025. ROA.45.

Mr. Delacruz timely filed his initial federal habeas petition on March 26, 2025. ROA.70–183. Among the sixteen claims he raised in the initial petition, Mr. Delacruz argued that his trial counsel were

ineffective during the punishment phase for failing adequately to investigate and present relevant mitigating evidence in violation of the Sixth Amendment and *Wiggins v. Smith*, 539 U.S. 510, 537 (2003). ROA.174–78. He further noted that this claim was unexhausted. ROA.178. Two days later, the district court entered an order specifying that Mr. Delacruz's amended petition was due on or before July 24, 2025, and that Mr. Delacruz could exceed the 100-page limit under the Northern District Local Rules by 50 pages. ROA.184.

On May 14, 2025, Mr. Delacruz filed an opposed motion to compel TDCJ to ensure that he was free from restraints during an expert neuropsychological examination. ROA.185–209. Mr. Delacruz argued that the federal district court had subject matter jurisdiction to issue this order in light of the pending federal petition. ROA.186. He further argued that 28 U.S.C. § 1651, the All Writs Act, authorized the district court to issue the order. ROA.186.

Mr. Delacruz submitted a number of documents in support of this motion. ROA.190–209. First, Mr. Delacruz presented a letter prepared by Dr. Robert Ouaou, a clinical neuropsychologist. ROA.190. Dr. Ouaou explained that neuropsychological "[t]esting requires face to face contact

with the examinee and to administer the tests with his hands encumbered in any way compromises the completeness of the evaluation." ROA.190. In addition, Dr. Ouaou noted that "[a]n essential component of the standardized neuropsychological assessment is motor testing that requires upper body (hands and arms) manipulation of objects and timed movements requiring both hands over multiple tasks." ROA.190. Thus, "[i]n order to conduct a comprehensive evaluation of Isidro Delacruz, he must be free of any restraints so that a full range of motion exists." ROA.190. In particular, Dr. Ouoau stressed the necessity "that his arms be unshackled." ROA.190.

TDCJ Board Policy 03.81 (BP-03.81) governs inmate access to counsel. ROA.193–209. Although legal visits are generally non-contact, inmates are permitted contact visitation when "the activities of an expert require a contact visit." ROA.202. TDCJ has previously confirmed that it will "allow an expert to have a contact visit with a death row inmate in the same room [without being] separated by a partition" and will "remove the inmate's restraints during a contact visit when compelled to do so by court order." ROA.192. Mr. Delacruz sought such an order in the district court. ROA.185–87.

The Director opposed Mr. Delacruz's motion. ROA.210–19. He argued that the federal district court lacked jurisdiction to order Mr. Delacruz free from restraints during a custodial neuropsychological evaluation. ROA.211–13. He also claimed that *Beatty v. Lumpkin*, 52 F.4th 632 (5th Cir. 2022), foreclosed the relief sought by Mr. Delacruz. ROA.213–14. In addition, the Director claimed that any evidence adduced from a neuropsychological examination would be inadmissible under 28 U.S.C. § 2254(e)(2) and relevant Supreme Court precedent. ROA.214–16. Finally, the Director asserted that existing TDCJ procedures adequately accommodate Mr. Delacruz's request. ROA.216–18.

The district court granted Mr. Delacruz's motion to be free from hand restraints during the evaluation but required that his mid-section and waist remain in restraints. ROA.221–27. At the outset, the court noted that the Director's concerns about AEDPA's potential restrictions on any evidence adduced were premature at this juncture. ROA.224. The court also rejected the Director's contention that it lacked the authority to issue Mr. Delacruz's requested order. ROA.225. In particular, the court noted that it "possess the statutory authority to authorize federal-

taxpayer funding for the purpose of allowing a federal habeas petitioner to develop new evidence in support of an unexhausted claim for which the petitioner may be able to overcome procedural default through a showing of ineffective assistance by state post-conviction counsel." ROA.225. The court further explained that it "has the authority to ensure that a mental health evaluation funded by federal taxpayers is conducted in a manner that produces professionally reliable results." ROA.225–26. Finally, the court specifically "retain[ed] the authority to impose appropriate sanctions, including the possible dismissal with prejudice of this federal habeas corpus action, should Delacruz engage in any violent, disruptive, or non-compliant behavior during his scheduled mental health evaluation." ROA.226.

The Director then filed a notice of appeal and an opposed motion to stay the district court's order. ROA.228–41. In seeking the stay, the Director argued that the district court's order was subject to immediate review by the Fifth Circuit pursuant to the collateral order doctrine. ROA.232–34. On the merits, the Director argued that the district court lacked jurisdiction to issue its order because 18 U.S.C. § 3599 could not confer jurisdiction, citing *Beatty v. Lumpkin*, 52 F.4th 632, 637 (5th Cir.

2022). ROA.235–36. (Notably, the Director argued this notwithstanding the fact that Mr. Delacruz never argued and the district court never said that § 3599 *conferred* jurisdiction; rather, as explained above, the district court merely cited § 3599 as statutory authority for issuing its order.) The Director also argued that AEDPA precluded review of any evidence Mr. Delacruz would develop as a result of the testing. ROA.236–37.

Mr. Delacruz opposed the motion to stay. ROA.243–45. He first noted that the district court plainly had jurisdiction over Mr. Delacruz's pending federal habeas petition and that the All Writs Act, 28 U.S.C. § 1651(a), authorized the court to issue orders in aid of that jurisdiction. ROA.243–44. Mr. Delacruz further noted that *Beatty* was easily distinguished because in that case, the petitioner had argued that § 3599 was the sole basis for the court's jurisdiction because "there was no pending litigation." ROA.244; *see Beatty*, 52 F.4th at 634. Mr. Delacruz also pointed out that the Director's assertions about AEDPA ignored binding circuit precedent that permits the courts to consider such evidence "'for the limited purpose of establishing an excuse for procedural

default, even in the wake of *Ramirez* and *Twyford*."[1] ROA.244 (quoting *Mullis v. Lumpkin*, 70 F.4th 906, 911 (5th Cir. 2023)). Mr. Delacruz also opposed the Director's additional arguments in favor of staying the order. ROA.245.

The district court denied the Director's motion to stay. ROA.261–65. The court rejected the Director's argument that *Beatty* foreclosed Mr. Delacruz's request and instead concluded that "[b]ecause Delacruz seeks federal habeas relief from his capital sentence under 28 U.S.C. § 2254, and not state clemency relief, the Fifth Circuit's holding in *Beatty* is inapposite." ROA.261. The district court also rejected the Director's contention that *Twyford* precludes Mr. Delacruz's request because the court was "not confronted with . . . federal habeas claims that have already been rejected on the merits by the appropriate state court." ROA.263. The district court concluded that the Director would not be irreparably injured by allowing a neuropsychological examination under the circumstances the court outlined in its initial order but that Mr. Delacruz's ability to secure "an effective and efficacious evaluation would

---

[1] *Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022); *Shoop v. Twyford*, 596 U.S. 811 (2022).

be substantially injured by a stay." ROA.264. This Court ultimately stayed the district court's order on June 9, 2025. ECF No. 33.

## SUMMARY OF THE ARGUMENT

This Court should vacate its stay of the district court's unshackling order and remand the case to the district court for further proceedings. First, this Court lacks jurisdiction over the Director's appeal because the district court's unshackling order is not immediately appealable under the collateral order doctrine. Second, the district court possessed both subject matter jurisdiction and statutory authority to issue the unshackling order; the Director's arguments to the contrary are belied by relevant precedent and the record in this case. Third, the factual provisions in AEDPA do not preclude the district court from ordering that Mr. Delacruz be free from restraints for a neuropsychological examination. Finally, the Director's argument that Mr. Delacruz cannot be safely evaluated while unshackled because he could use the paper and plastic testing materials to perpetrate violence is baseless speculation, and his claim that all death-sentenced inmates present an insurmountable security risk is belied by TDCJ policy and past practices.

# ARGUMENT

## I. This Court lacks jurisdiction because the district court's order was not immediately appealable under the collateral order doctrine.

Although Congress has generally confined appellate jurisdiction to appeals from "final decisions of the district courts of the United States," 28 U.S.C. § 1291, the Supreme Court "has long given" this provision a "practical rather than a technical construction," *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Pursuant to this understanding, the Supreme Court has determined that courts should treat "a narrow class of decisions that do not terminate the litigation" as "final" "in the interest of achieving a healthy legal system." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (cleaned up). Thus, appellate courts have jurisdiction over collateral orders only when they are conclusive, cover important questions that are completely separate from the merits of the underlying lawsuit, and concern important questions that would be effectively unreviewable on appeal from final judgment. *Cohen*, 337 U.S. at 546–47; *accord Dig. Equip.*, 511 U.S. at 867.

"The[se] conditions are 'stringent.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Dig. Equip.*, 511 U.S. at 868). This is because the

collateral order doctrine "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered," lest the doctrine "undermine[] efficient judicial administration and encroach[] upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Mohawk*, 558 U.S. at 106 (cleaned up); *see In re Deep Water Horizon*, 793 F.3d 479, 484 (5th Cir. 2015) ("Expanding the doctrine to permit jurisdiction in too many cases risks allowing the exception to swallow the rule."). Accordingly, the Supreme Court has long stressed the "narrow ambit" of immediately appealable collateral orders. *Dig. Equip.*, 511 U.S. at 865; *see Will*, 546 U.S. at 350 ("[A]lthough the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership.").

The district court's unshackling order fails the strict parameters the Supreme Court has placed on the collateral order doctrine because it is not conclusive, it is inextricably intertwined with the merits, and it is not unreviewable. Moreover, contrary to the Director's assertion, *see* Br. at 10–11, the Supreme Court did not approve a "similar" review in *Shoop v. Twyford*, 596 U.S. 811 (2022). Permitting collateral review would

therefore run afoul of *Cohen* and its progeny, as well as the Supreme Court's insistence that the collateral order doctrine remain narrow. This Court should therefore dismiss the appeal for lack of jurisdiction.

*First*, the district court order is not conclusive. Although the Director claims the unshackling order is conclusive because, after the evaluation occurs, the district court "would have no reason to revisit the order when resolving the federal habeas proceedings," Br. at 11, this contention ignores a critical part of the district court's unshackling order. To the contrary, the district court explicitly "retain[ed] the authority to impose appropriate sanctions, including the possible dismissal with prejudice of this federal habeas corpus action, should Delacruz engage in any violent, disruptive, or non-compliant behavior during his scheduled mental health evaluation." ROA.226. Importantly, the district court designed these caveats "to address [the Director's] concerns about potential risks." ROA.221. Because the possibility of revisiting the order is part of the order itself, the Director cannot characterize the order as conclusive for purposes of the collateral order doctrine. *See Swint v. Chambers Cnty. Com'n*, 514 U.S. 35, 42 (1995) (holding that the district court's stated intention to revisit ruling failed *Cohen* order because it was

"tentative, informal or incomplete"); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (order denying class certification not appealable in part because such order was subject to revision in the district court), *superseded by rule as stated in Microsoft Corp. v. Baker*, 582 U.S. 23 (2017).

*Second*, the content of the district court's order that Mr. Delacruz be free from hand restraints during a neuropsychological examination is inextricably intertwined with the merits of Mr. Delacruz's pending federal petition. In his initial federal petition, Mr. Delacruz raised a claim of ineffective assistance of trial counsel during the punishment phase because, among other things, trial counsel failed to investigate and present critical mitigating information. ROA.174–78. Mr. Delacruz also noted that this claim was unexhausted and had not been presented to state courts. ROA.178. In opposing Mr. Delacruz's request to be examined free from restraints, the Director "speculate[d] . . . that any potential evidence proffered by this expert evaluation would be used to support his unexhausted punishment-related ineffective-assistance-of-trial-counsel (IATC) claim." ROA.214. In addition, the district court identified Mr. Delacruz's neuropsychological examination as potentially relevant to

claims that Mr. Delacruz may present in his already-authorized amended petition and noted that such claims were unexhausted and could be subject to a motion filed pursuant to *Rhines v. Weber*, 544 U.S. 269, 276 (2005). ROA.224–25. Thus, the results of any neuropsychological evaluation are highly relevant to at least one claim for relief that Mr. Delacruz has already identified.

Moreover, the methods by which any testing is conducted affect the results and, by extension, the merits of the underlying claim. Dr. Ouaou explained that "[t]esting requires face to face contact with the examinee and to administer the tests with his hands encumbered in any way compromises the completeness of the examination." ROA.190. He also noted that "[a]n essential component of the standardized neuropsychological assessment is motor testing" such that "[i]n order to conduct a comprehensive evaluation of Isidro Delacruz, he must be free of any restraints so that a full range of motion exists." ROA.190.

Issues are not separate under the collateral order doctrine "where they are but steps towards [a] final judgment in which they will merge." *Cohen*, 337 U.S. at 546; *see id.* (collateral orders cannot be "of such an interlocutory nature as to affect, or to be affected by, decision of the

merits of th[e] case"). Collateral review of the unshackling order is therefore inappropriate because the issues raised by unshackling—i.e., the validity and reliability of the testing—are not separate from the merits, which involve consideration of the results of that testing. *See Pan E. Expl. Co. v. Hufo Oils*, 798 F.2d 837, 839–40 (5th Cir. 1986) (denial of motion to dismiss based on international comity was not immediately appealable because, among other things, "the considerations necessary to decide whether to extend comity to the Canadian stay order [were] inextricably bound with the facts relevant to the merits").

The Director's arguments to the contrary lack merit. At the outset, as discussed in detail *infra*, the district court's order merely required TDCJ to comply with its existing procedures, which permit unshackled contact visits between experts and inmates. *See* ROA.202 (TDCJ policy permitting contact visits when required by expert activity); ROA.192 (TDCJ official confirming that it will remove restraints pursuant to court order). Thus, the order does not implicate questions of "state sovereignty" that are distinct from the merits, as the Director contends. *See* Br. at 11.

Moreover, the other Texas district court orders the Director cites, *see* Br. at 12, have nothing to do with the degree to which the unshackling

order is completely separate from the merits of a claim. Nor do those cases conflict with the district court order at issue here. In *Hall v. Guerrero*, the district court denied without prejudice a motion for unshackling in large part to allow Hall first to pursue state court relief. *See* No. 4:24-CV-627 (S.D. Tex. Nov. 6, 2024), ECF No. 14 at 11. Here, the district court order makes no mention of potential state court avenues. ROA.221–27. And although the district court in *Beatty* did deny Beatty's unshackling motion for lack of jurisdiction, that was because the only basis for jurisdiction asserted in that case was 18 U.S.C. § 3599, presumably because Beatty did not have a pending federal petition. *See* No. 4:09-CV-225-SDJ, 2022 WL 5417480, at *2–3 (E.D. Tex. Sep. 16, 2022). Here, Mr. Delacruz did not invoke § 3599 as a *basis* for the district court's jurisdiction, so *Beatty* is inapposite.

*Third*, because the unshackling order does nothing more than compel a state prison to comply with its own security policies and procedures, the Director's rights will remain reviewable on appeal from final judgment and no valuable interests will be lost. *See Will*, 546 U.S. at 352–53 ("[T]he decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or

some particular value of high order."). All parties recognize that the relevant TDCJ policy is B.P.-03.81. *See* ROA.193–209. According to this policy, legal visits will be non-contact "unless . . . the activities of an expert require a contact visit." ROA.202. Dr. Ouaou has explained why the testing he intends to conduct requires an unshackled contact visit and notably, the Director has not presented any evidence to the contrary. *See* ROA.190; ROA.221, ROA.223. In addition to this written policy, the Director acknowledges that TDCJ will "allow an expert to have a contact visit with a death row inmate in the same room" and "remove the inmate's restraints during a contact visit when compelled to do so by a court." ROA.192. This is precisely the accommodation Mr. Delacruz sought.

The Director routinely uses this procedure to secure court orders identical to the one Mr. Delacruz sought and obtained below.[2] It is unclear how the Director can logically contend that death-sentenced inmates can never be safely unshackled during a contact visit in order to

---

[2] These cases include *Panetti v. Lumpkin*, No. 1:04-cv-00042 (W.D. Tex. June 29, 2022), ECF No. 264; *Washington v. Lumpkin*, No. 4:07-cv-721 (S.D. Tex. Feb. 15, 2022); *Ex parte Gonzales*, WR-40,541-07 (Tex. 358th Dist. Ct.—Ector County, Apr. 24, 2024).

object to the district court's order in this case while repeatedly asking courts to unshackle inmates when the state professes need.

What's more, TDCJ allows death row inmates to have unshackled contact visits even without a court order. As recently as last year, TDCJ facilitated a contact visit with a death-row inmate who was unshackled at the hands and ankles without court order and permitted him to hold hands with members of the Texas Legislature.[3] And another death row inmate was allowed to have an unshackled contact visit with lawmakers in 2022.[4] If those visits did not create "public safety risks and burdens" or implicate "an important issue of state sovereignty" worthy of judicial intervention,[5] *see* Br. at 12–13, there is no reason for this court to review

---

[3] Innocence Project, *Texas Lawmakers Pray With Robert Roberson and Urge Clemency to Stop Oct. 17 Execution* (October 1, 2024), https://innocenceproject.org/news/texas-lawmakers-pray-with-robert-roberson-and-urge-clemency-to-stop-oct-17-execution/; Kiara Alfonseca, *Texas set to execute man on discredited 'shaken baby syndrome' hypothesis*, ABC NEWS (October 8, 2024), https://abcnews.go.com/US/texas-set-execute-man-discredited-shaken-baby-syndrome/story?id=114590999.

[4] Jolie McCullough, *Listen as Melissa Lucio learns her life has been spared*, TEXAS TRIBUNE (April 25, 2022), https://www.texastribune.org/2022/04/25/melissa-lucio-execution-reprieve/.

[5] Mr. Delacruz is not suggesting Mr. Roberson or Ms. Lucio posed a security risk. But if unrestrained death row inmates can have contact visits with state lawmakers without a court order or TDCJ interference, the Director can hardly complain about Mr. Delacruz remaining unshackled during a neuropsychological examination with his expert when no security concerns have been alleged or proven.

an order that does nothing more than compel TDCJ to unshackle Mr. Delacruz's hands during his expert evaluation in accordance with TDCJ's existing policies and procedures.

The Director nevertheless argues the unshackling order is unreviewable because the burdens and risks associated with Mr. Delacruz's unshackled expert evaluation would already have been undertaken by the time of final judgment. *See* Br. at 12–13. But because TDCJ unshackles death-sentenced inmates for expert evaluations on the Director's motion when doing so benefits the state, and recently allowed other death-sentenced inmates fully unrestrained contact visits with members of the Texas Legislature, any concerns related to unreviewability because of the supposed burdens and risks cited in this case are further vitiated by TDCJ's own behavior in previous cases.

Collateral review is also inappropriate because the district court's order is akin to a discovery order and "the rule remains settled that most discovery rulings are not final." *Mohawk*, 558 U.S. at 108 (citing 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.23, p. 123 (2d ed.1992)). "Routine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of

appeals, and substantially reduce the district court's ability to control the discovery process." *Id*. And this Court has often recognized that immediate appeals under the collateral order doctrine are frequently denied in discovery contexts. *See, e.g.*, *Leonard v. Martin*, 38 F.4th 481, 487 n.2 (5th Cir. 2022) (collecting cases). Any problems arising from this order can be addressed by the district court after Mr. Delacruz's evaluation, so the order is not unreviewable for purposes of the collateral order doctrine. *See Mohawk*, 558 U.S. at 109 (order requiring disclosure of attorney–client information was not immediately appealable because appellate courts can remedy that disclosure "in the same way they remedy a host of other erroneous evidentiary rulings").

*Finally*, contrary to the Director's contention, the Supreme Court in *Twyford* did not "approve[] of similar review" to the order at issue here. Br. at 10; *see Twyford*, 596 U.S. at 817 n.1. Although the Director describes the class of claims the Supreme Court approved in *Twyford* as orders forcing a state prison to "disregard" security procedures, Br. at 10–11, this mischaracterizes both the unshackling order below (which compelled TDCJ to comply with its existing policies and procedures, *see* ROA.221–27 and *supra*) and *Twyford* (which is limited to transportation

orders and involves concerns the unshackling order does not raise, 596 U.S. at 817 n.1, 821–22).[6] In arguing to the contrary, the Director effectively seeks to have this Court expand the narrow scope of claims subject to collateral order review.

At issue in *Twyford* was a federal court order compelling the state to transport a state prisoner to a hospital for medical testing. On appeal, the "safety risks and burdens" motiving the Supreme Court to reverse that grant were those related to taking the prisoner "outside the prison's walls" and into "a public setting" that "may . . . present serious risks to public safety." *Twyford*, 596 U.S. at 817 n.1, 821–22. In noting that it had jurisdiction over the appeal pursuant to the collateral order doctrine, the only cases to which the Court cited were cases concerning transportation orders. *Id.* at 821–22 (citing, e.g., *Price v. Johnson*, 334 U.S. 266, 285 (1948)). Indeed, other circuits analyzing the jurisdictional portion of *Twyford* have also characterized it as concerning only transportation orders. *See Fleming v. United States*, 127 F.4th 837, 856 (11th Cir. 2025) (describing *Twyford* as considering "when a federal court can order

---

[6] Referencing *Beatty* does not help the Director's argument because the inmate in that case appealed a final order, not a collateral one; nowhere is the collateral order doctrine mentioned in that case. Br. at 10–12; *see Beatty*, 52 F.4th at 634–35.

transport of a state prisoner under the All Writs Act"); *Ozturk v. Hyde*, 136 F.4th 382, 389–90 (2d Cir. 2025) (noting that in *Twyford*, "the Supreme Court held that, pursuant to the collateral order doctrine, federal courts of appeals have appellate jurisdiction to review a transportation order under the All Writs Act"); *Mohamed v. Jones*, 100 F.4th 1214, 1225 (10th Cir. 2024) (describing *Twyford* as "extending the collateral order doctrine to prisoner transport orders under the All Writs Act"); *United States v. Cervantes*, No. 22-10093, 2023 WL 3375571, at *1 (9th Cir. May 11, 2023) (noting that *Twyford* concerned "State actors subject to transportation orders").

But Mr. Delacruz did not seek an order compelling TDCJ to transport him outside of the prison; he merely requested that, in accordance with TDCJ's policies and past practices, his hands remain unshackled while his expert evaluates him during a contact visit. By granting Mr. Delacruz's request, the district court did not order TDCJ to *disregard* existing security procedures; it ordered TDCJ to *comply* with them. ROA.221–27. The district court correctly cited the Director's sworn statement acknowledging that "TDCJ allows inmates to be evaluated while unshackled at times and under circumstances that TDCJ deems

reasonably necessary without causing undue security issues." ROA.223;

*see* ROA.221, ROA.226 (noting that TDCJ presented no evidence that Mr.

Delacruz would present a security threat and that its order adequately

addressed any security concerns). TDCJ's written policies and procedures

say the same. *See supra.* Accordingly, the order below cannot be deemed

part of a class or category of claims compelling a state prison to disregard

security procedures and stands in stark contrast to the situation the

Supreme Court considered in *Twyford*.

In sum, this Court should dismiss the Director's appeal for lack of

jurisdiction because the district court's order is not immediately

appealable under the collateral order doctrine.

## II. The district court had both jurisdiction and the authority to order that Mr. Delacruz be free from restraints during his neuropsychological examination.

The district court correctly determined that it possessed subject

matter jurisdiction over Mr. Delacruz's pending federal habeas petition

and that it possessed the authority to issue orders in aid of that

jurisdiction. In arguing that the district court erred in this determination,

the Director conflates subject matter jurisdiction with statutory

authority to act. *See* Br. at 13–19. Moreover, the cases on which the

Director relies are inapposite to this case. This Court should vacate its stay and remand the case to the district court.

Although the Director claims that the district court "cites to § 3599 as establishing jurisdiction to grant the relief requested," Br. at 14–15 (citing ROA.225–26), that is not what the district court did. Rather, the district court noted that it "possesses *the statutory authority* to authorize federal-taxpayer funding for the purpose of allowing a federal habeas petitioner to develop new evidence in support of an unexhausted claim for which the petitioner may be able to overcome procedural default through a showing of ineffective assistance by state post-conviction counsel." ROA.225 (emphasis added). Thus, as the district court's order makes plain, the district court cited § 3599 not as a provision that *confers jurisdiction*; it cited that statute to explain its *statutory authority* to act in furtherance of the jurisdiction it already possessed.

Because the district court did not rely on § 3599 to *confer* jurisdiction, the Director's reliance on *Beatty v. Lumpkin*, 52 F.4th 632 (5th Cir. 2022), is misplaced. *Beatty* concerned a situation where an applicant argued that "sections 3599(e) and 3599(f) provide not only funding authorization but also a grant of jurisdiction for federal courts"

"when there was no pending litigation." *Beatty*, 52 F.4th at 634. This Court rejected the argument that § 3599 "confer[s] jurisdiction or provide[s] a cause of action to determine the scope of all activities that are funded by the statute." *Id.* at 636. *Beatty* accordingly held that "the district court correctly ruled that it did not have jurisdiction over Appellant's motion to compel." *Id.* at 638.

Mr. Delacruz's situation stands in marked contrast to *Beatty*. Here, Mr. Delacruz has a pending federal petition with permission to file an amended petition. ROA.70–181, ROA.45, ROA.184. Largely in light of this critical difference, Mr. Delacruz has never argued that § 3599 confers subject matter jurisdiction to the district court. *See* ROA.185–209. And as discussed above, the district court never indicated that § 3599 granted the court subject matter jurisdiction over the unshackling order. *Beatty* is simply inapposite to Mr. Delacruz's case.

Instead, Mr. Delacruz has always maintained that the federal district court has plenary jurisdiction over his pending federal petition. ROA.243–44. *McFarland v. Scott* makes clear that federal courts have *subject matter jurisdiction* upon the appointment of counsel in federal court. 512 U.S. 849, 854–57 (1994). Although the Director claims that

*McFarland* does not support a *statutory* right of unshackling, *see* Br. at 17–18, that contention confuses the statutory provisions at issue in *McFarland*. In *McFarland*, the Supreme Court had to decide when federal courts had subject matter jurisdiction over federal habeas proceedings in order to determine whether federal courts had authority to stay an execution. *McFarland*, 512 U.S. at 856–58. This is because "[f]ederal courts cannot enjoin state-court proceedings unless the intervention is authorized expressly by federal statute or falls under one of two other exceptions to the Anti-Injunction Act." *Id.* at 857.

Here, however, Mr. Delacruz neither requested that the district court enjoin state-court proceedings, nor did the district court do so. Instead, Mr. Delacruz asked the federal district court to issue an order compelling TDCJ to comply with its own policies and procedures. ROA.185–89. Thus, the Director is incorrect in arguing that *McFarland* actually requires Mr. Delacruz to point to a specific statutory right. *See* Br. at 18. Because the district court had *subject matter jurisdiction* over Mr. Delacruz's pending federal habeas petition, the district also possessed *statutory authorization* to issue an order requiring TDCJ to comply with its policies. That the district court did not specifically

mention the All Writs Act does not mean that the All Writs Act does not permit it to issue such orders. As Mr. Delacruz argued below, that provision simply provides a federal district court with the authority to "issue all writs necessary or appropriate *in aid of [its] respective jurisdictions* and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added).[7] That the district court specifically invoked § 3599 as a basis for its statutory authority does not change this fact.

In sum, the district court had subject matter jurisdiction and statutory authority to issue the order that Mr. Delacruz be free from restraints during his neuropsychological examination.

### III. Neither AEDPA nor *Shoop v. Twyford* precludes the district court from ordering Mr. Delacruz free from restraints during his neuropsychological examination.

The district court also correctly concluded that *Twyford* does not bar either issuance of its order or consideration of evidence adduced from the neuropsychological examination. *See* ROA.262–63. As the district court noted, *Twyford* addressed "whether a federal court could issue an

---

[7] Importantly, contrary to the Director's assertion, Mr. Delacruz has never argued that the All Writs Act *confers* jurisdiction on the district court. *See* ROA.186; ROA.243–44. Rather, he has always argued that because the district court has subject matter jurisdiction over the pending habeas petition, the district court may issue orders in aid of that jurisdiction under the All Writs Act. *See* ROA.186; ROA.243–44.

order authorizing the transportation of a state death-row inmate for the purpose of having the inmate examined in a medical facility . . . for the purpose of developing new evidence in support of an ineffective-assistance claim that had been fully litigated in the state courts in a post-conviction proceeding." ROA.262. In contrast, the district court here was presented with at least two claims that had not yet been presented to state courts and could be subject to a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), consistent with *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). ROA.263. In other words, any evidence produced from a neuropsychological examination of Mr. Delacruz could be used to excuse procedural default of a claim.

The district court's conclusions are consistent with this Court's interpretation of *Twyford*. In *Mullis v. Lumpkin*, this Court considered whether, consistent with *Martinez Ramirez* and *Twyford*, it could apply AEDPA's evidentiary restrictions under 28 U.S.C. § 2254(e)(2) to evidence presented to overcome procedural default. 70 F.4th 906, 910–11 (5th Cir. 2023). The Court acknowledged that *Twyford* stated that "'this Court has already held that, if § 2254(e)(2) applies and the prisoner cannot meet the statute's standards for admitting new merits evidence,

it serves no purpose to develop such evidence just to assess cause and prejudice.'" *Id.* at 910 (quoting *Twyford*, 596 U.S. at 823). But *Mullis* described this language as "*dictum.*" *Id.*

Because this language is *dictum*, this Court's decision in *Segundo v. Davis*, 831 F.3d 345 (5th Cir. 2016), remains controlling as to what evidence may be considered to overcome procedural default pursuant to this Court's rule of orderliness. *See Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 591 (5th Cir. 2017) (providing that "a panel may not overturn a controlling precedent absent an intervening change in law, such as by a statutory amendment, or the Supreme Court, or our en banc court" (citations and quotations omitted)). *Segundo* permits a federal district court to consider evidence "'presented for the first time in federal court' when determining whether the defendant's procedural default was excused." *Mullis*, 70 F.4th at 910 (quoting *Segundo*, 831 F.3d at 351). Indeed, *Mullis* itself recognized that "[a]lthough the Supreme Court may, some day, extend AEDPA's evidentiary restrictions to the *Martinez* context (or, as it has suggested, dispense with *Martinez* hearings altogether), we may not violate our rule of orderliness to do so." *Id.* at 911.

Here, as discussed *supra*, any evidence that results from a neuropsychological examination of Mr. Delacruz would pertain to Claim 15 in his initial federal petition. ROA.174–78. Because this claim is unexhausted, Mr. Delacruz must overcome procedural default for the federal court to consider this claim. *See Trevino*, 569 U.S. at 429. *Segundo* permits the federal court to consider this evidence in evaluating whether Mr. Delacruz can successfully overcome the default, and the district court's similar conclusion was consistent with this Court's precedent.

## IV. The Director's newly raised "security concerns" do not lend any support to his argument that the district court's order is inappropriate or that Mr. Delacruz should be denied the legal visit he secured in accordance with TDCJ's procedures.

The Director complains that the district court correctly noted the dearth of allegations or evidence suggesting Mr. Delacruz would present any kind of security risk during an unshackled expert examination. Br. at 23. The Director argues that he has no obligation to provide such evidence, and then—for the first time during these proceedings—attempts to make security-related arguments and present supporting evidence. *Id*. But TDCJ policy generally requires an official to provide an explanation when denying or interfering with an inmate's requested legal

visit, and the speculative "security risks" the Director now identifies lack any support.

Inmates in state custody have a constitutional right to access their legal team. *See* U.S. CONST. AMEND. 6. Recognizing the importance of this right, TDCJ policies and procedures proscribe TDCJ from denying or terminating an inmate's requested legal visit unless "a legitimate threat to security or orderly operations" exists. ROA.204. Even then, TDCJ can only interfere "for as long as such a threat exists and only if no lesser action would alleviate the threat" and must be prepared to explain the alleged security risks to the inmate's attorney. ROA.204. As discussed *supra*, in accordance with TDCJ policy, Mr. Delacruz requested a contact visit with his expert to ensure his examination occurred without the encumbrance of a partition and secured a court order ensuring he would be free from restraints so that he could have unrestricted use of his hands during the examination.

Moreover, if security risks were present, one would expect the Director to mention those risks to the court tasked with deciding whether to grant an order ostensibly compelling TDCJ to assume them. But while the Director protested issuance of that order in the district court, he

never alleged Mr. Delacruz would present a security risk if he remained unshackled during his expert evaluation or proffered any evidence to support such an allegation. *See* ROA.221 ("The respondent has not furnished this Court with any fact-specific allegations or evidence suggesting that allowing Delacruz's arms and hands to be free from shackles during his scheduled mental health evaluation poses a foreseeable risk of possible violence."); ROA.223 ("The parties have not alleged any facts or presented evidence to the Court showing any reason to believe that unshackling Delacruz's arms and hands during [neuropsychological testing] will pose a foreseeable risk or violence or misconduct."); ROA.263–64 ("Respondent has provided no evidence or explanation why the exam cannot be done safely by the defense without handcuffs . . . .).

Now, for the first time on appeal, the Director attempts to point to security risks that could justify his opposition to the unshackling order. The Director first claims that Mr. Delacruz's jury affirmatively answered the future dangerousness question at his trial, but this is true of all death row inmates, including those for whom the Director himself has sought and obtained unshackling orders in recent cases. *See supra*, Section I and

n.2. The Director's late and contradictory effort on this point undermines the strength of this argument.

Next, the Director posits that Mr. Delacruz would pose a security threat because he will be asked to manipulate "objects"—which the Director attempts to label as "tools"—with unshackled hands during testing and would therefore be in a position to replicate the crime for which he was convicted. *See* Br. at 23. The Director also attempts to emphasize the fact that Mr. Delacruz's alleged offense involved a knife, but he does not explain how the paper worksheets or plastic blocks Dr. Ouaou intends to bring to the examination can be wielded like a knife. And again, as recently as last year, the Director secured an unshackling order for a death-sentenced inmate convicted of a knife crime. *See supra*, n.2 (*Ex parte Gonzales*); *Gonzales v. Quarterman*, 458 F.3d 384, 386 (5th Cir. 2006) (describing one victim as being stabbed eleven times and another victim having "stab wounds too numerous to count, including many defensive wounds").

Finally, the district court's order included two provisions that addressed any security concerns, and the Director has not explained why those two lesser actions are insufficient for that purpose. Specifically, the

district court (1) ordered that Mr. Delacruz's legs and ankles remain shackled during the evaluation, and (2) reserved the right to revisit its order and sanction Mr. Delacruz if he misbehaves during his evaluation. ROA.226–27. Mr. Delacruz has not objected to these conditions. Because any supposed security concerns are adequately addressed by the "lesser actions" the district court designed, the Director's final challenge to the district court's order falls short.

## CONCLUSION

For the foregoing reasons, this Court should vacate its order staying the district court's order that Mr. Delacruz be free from restraints during his neuropsychological evaluation and remand the cause to the district court for further proceedings.

Respectfully submitted,

DATE: September 22, 2025

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
jeremy_schepers@fd.org

*/s/ Kathryn Wood Hutchinson*
Kathryn Wood Hutchinson (TX 24078707)
McKenzie Edwards (TX 24116316)
Derek VerHagen (TX 24090535)
Assistant Federal Public Defenders
katy_hutchinson@fd.org

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
(214) 767-2746
(214) 767-2886 (fax)

*Counsel for Petitioner–Appellee*
*Isidro Miguel Delacruz*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will send notification of such filing to all counsel in this case at their e-mail addresses on file with the Court.

*/s/ Kathryn Wood Hutchinson*
Kathryn Wood Hutchinson


## CERTIFICATE OF COMPLIANCE

I certify that (1) this Brief was prepared in 14-point Century Schoolbook font using Microsoft Word software, (2) this Brief is 6,944 words, excluding the parts of the Brief exempted by the rules of court, and (3) this Brief has been scanned for viruses and the Brief is virus-free. Counsel further certifies that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13.

*/s/ Kathryn Wood Hutchinson*
Kathryn Wood Hutchinson